# Exhibit 4

Provost's Findings & Recommendations



July 31, 2017

Mr. Brian Jackson
341 Main Street #500
Salt Lake City, UT 84111

Dear Mr. Jackson,

It has come to my attention that at two points in my response to Ms. Kamille Carter's Sexual Harassment Complaint against Dr. Jason Fritzler, I did not cite the appropriate PPM. On the bottom of page two of the memo to Ms. Carter, in the paragraph beginning "The preponderance of evidence," the second sentence reads "Although Ms. Carter's complaint does not accuse Dr. Fritzler of violating PPM 3-32 (Consensual Relationships). . . ." The actual Consensual Relationships PPM is 3-32a.

Similarly, on the third page of the memo, in the paragraph that begins "Given Dr. Fritzler's violations of PPMs 3-32 and 9-5," 3-32 actually should be 3-32a. I have corrected those errors in the attached revised Memo.

The same error arises in the letter of reprimand I placed in Dr. Fritzler's file. The first sentence of that reprimand should say PPM 3-32a, not 3-32. A revised version of the reprimand also is attached.

I request that you convey copies of these documents to your client. I do not have a current address for him.

Sincerely,

Madonne Miner, Provost

Attachments: Revised Memo, Revised Reprimand Letter

WEBER STATE UNIVERSITY

OFFICE OF THE PROVOST
ACADEMIC AFFAIRS

June 26, 2017

Dr. Jason Fritzler
Department of Microbiology
Weber State University
Ogden, UT

Dear Dr. Fritzler:

This letter serves as a formal reprimand for conduct in violation of PPMs 3-32a and 9-5. An investigation instigated after an allegation of Sexual Harassment filed against you in January, 2017, brought to light compelling evidence of an exploitative sexual relationship with a student enrolled in your class. You neither informed a supervisor about this relationship, nor made alternative arrangements for evaluation of this student.

A copy of this reprimand will be placed in your professional file.

Dr. Madonne Miner
Provost and Vice President for Academic Affairs



To: Ms. Kamille Carter
From: Dr. Madonne Miner, Provost  MM
Re: Sexual Harassment Complaint filed on January 30, 2017
Date: June 26, 2017

I write in response to Ms. Kamille Carter's formal complaint of January 30, 2017, alleging that Dr. Jason Fritzler violated Weber State University policies by sexually harassing her during fall semester 2016 and spring semester 2017. In making my response, I have relied upon the complaint itself; responses to the complaint from Dr. Fritzler and his attorney; the investigative report produced by WSU's Affirmative Action Officer, Mr. Barry Gomberg; witness statements provided by parties associated with both the complainant and respondent; records of e-mail conversations allegedly occurring on the university's learning management system (CANVAS) and on G-mail; responses from Dr. Bret Ellis, WSU's Vice President for Information Technology, to questions about information technology; and on WSU's Policies and Procedures Manual (the PPM's).

Like Mr. Gomberg, I see the pertinent WSU Policies and Procedures as including: PPM 3-32 (Discrimination and Harassment); 3-32a (Consensual Relationships); and 9-5 (Faculty Responsibilities to Students). Also like Mr. Gomberg, I understand that the "evidentiary standard applicable to all claims of WSU policy violations requires the complainant to meet the 'preponderance of evidence' level of proof." Mr. Gomberg clarifies the evidentiary standard in this case by explaining that "it must be determined to be more likely than not that Fritzler engaged in sexually-oriented behavior that was unwelcome to Carter, that was so severe or pervasive that it denied or limited Carter's ability to participate in or benefit from the University's program."

Thus, the first issue to be addressed here is whether Ms. Carter has provided a preponderance of evidence to establish that a sexual relationship took place between herself and Dr. Fritzler. The evidence offered by Ms. Carter includes her own statement; a statement from her husband, Rhett Carter, who claims he walked in on his wife and Dr. Fritzler in the Carters' bedroom; a statement from Ms. Carter's father, who notes that Mr. and Mrs. Carter confided in him the day after Rhett Carter found his wife in bed with Dr. Fritzler; and hundreds, if not thousands, of e-mails. The most powerful evidence, from my perspective, are the e-mails, which document a relationship that moves from professional to personal to sexual.

Dr. Fritzler, however, denies the existence of a sexual relationship with Ms. Carter, denies the validity of e-mail evidence produced by Ms. Carter, and denies having seen the e-mail correspondence allegedly exchanged between Ms. Carter and himself prior to this investigation.

He and his attorney suggest that someone may have tampered with Dr. Fritzler's campus computer, note that Dr. Fritzler and his wife share an e-mail account at home, and observe that some of the date stamps of e-mails introduced into evidence would be at times Dr. Fritzler was with other people.

Wanting more information about how to determine the validity of the e-mail evidence, I approached Dr. Bret Ellis, WSU's VP for Information Technology. In a letter dated June 9, 2017, Dr. Ellis confirmed that Dr. Fritzler logs into WSU's CANVAS program for classroom management and that when students post comments or questions in CANVAS for Dr. Fritzler, those posts are forwarded to jasonfritzler@weber.edu. In addition, Dr. Ellis was able to discern that conversations between Dr. Fritzler and his students (including Ms. Carter) were either routed through Amazon SES (Simple Email Service) or through "what appears to be a hosted Quest connection through Dr. Fritzler's home and appears to be accomplished via a cell phone." In other words, Dr. Fritzler often uses either a campus weber.edu connection or a cell phone connected to his home network to write and reply to messages.

In addition, I asked Dr. Ellis if the flirtatious and teasing language that appears in alleged e-mails between Dr. Fritzler and Ms. Carter appears in e-mail conversations Dr. Fritzler has with other students. Dr. Ellis replied "Generally, it appears that communication between male students and Dr. Fritzler is very professional. Communication with Dr. Fritzler and female students is friendly, teasing and may be interpreted as flirtatious." Dr. Ellis included a few examples that sound very similar in language and tone to those allegedly directed to Ms. Carter early in the e-mail correspondence.

Finally, with respect to Dr. Fritzler's suggestion that his campus computer may have been compromised as a result of a hack that occurred last year, Dr. Ellis noted that an incident occurred in 2014, but the perpetrator was caught and arrested. A more recent incident was investigated and the professor involved determined he was mistaken in thinking a hack had occurred. Since the move of the Science College to Tracy Hall last summer, Dr. Ellis points out that Tracy actually is "one of the most secure bulidings due to the card access required to enter office suites and labs."

The preponderance of evidence mentioned above, especially that evidence associated with e-mail texts, indicates that a sexual relationship existed between Dr. Fritzler and Ms. Carter. Although Ms. Carter's complaint does not accuse Dr. Fritzler of violating PPM 3-32a (Consensual Relationships), his entry into a relationship with a student whose academic performance he was to evaluate, as well as his failure to apprise a supervisor of this relationship, render Dr. Fritzler out of compliance with PPM 3-32a.

If we accept that a sexual relationship between Dr. Fritzler and Ms. Carter occurred, the next issue is whether or not the relationship was sexually harassing to Ms. Carter. According to PPM 3-32, harassment is "unwelcome conduct directed against a person based on one or more of that person's 'protected classifications.'" (these classifications include 'sex'). Here, the very evidence supplied by Ms. Carter to substantiate that sexual conduct occurred, appears to counter a claim that the conduct was unwelcome. Throughout the e-mail record, Ms. Carter seems as engaged by and interested in Dr. Fritzler as he is with her. Occasionally, as Mr. Gomberg notes in his Investigation Report, Ms. Carter suggests that Dr. Fritzler is "out of her league," and that she does not know how to read his promise that he will "help her." But at other times, Ms. Carter appears confident and strong, teasing and taunting Dr. Fritzler.

PPM 3-32a IB cautions faculty and supervisory employees who are engage in consensual sexual relationships that they should "be aware that if subsequent charges of sexual harassment are lodged, it may be difficult to sustain a defense merely on the grounds of mutual consent." Dr. Fritzler, denying the entire relationship, does not try to sustain a defense on the grounds of mutual consent. Mr. Gomberg argues that the power differential between older male faculty member and younger female student is such that mutual consent does not play a role in this case. On this point, I come to a slightly different conclusion than Mr. Gomberg. Although recognizing a structural power imbalance and aware of occasional expressions of concern from Ms. Carter about what she is getting into, I do not find a preponderance of evidence suggesting that Ms. Carter found sexual overtures from Dr. Fritzler to be unwelcome or "severe." Instead, the e-mail trail suggests Ms. Carter enjoyed and reciprocated sexual attention—at least until the moment her husband, Rhett Carter, discovered the affair. The consistency and overwhelming number of positive e-mails from Ms. Carter to Dr. Fritzler conveys a sense of her commitment to the relationship with Dr. Fritzler.

Certainly, there is an e-mail in which Dr. Fritzler comments that both he and Ms. Carter may get into trouble if their relationship is discovered. I read that comment not as an indication that Dr. Fritzler will use his power as a faculty member to punish Ms. Carter, but instead, as a statement of personal concern about varied negative consequences that will result if their relationship is discovered.

Although I disagree with Mr. Gomberg's finding that Dr. Fritzler sexually harassed Ms. Carter, I am in agreement with Mr. Gomberg that Dr. Fritzler violated PPM 3-32a, which requires that supervising employees who engage in sexual relationships with students or fellow employees must make that relationship know to their own supervisors and arrange for alternative evaluation processes. I also find that Dr. Fritzler violated PPM 9-5, Faculty Responsibilities to Students. Evidence in the e-mail correspondence indicates that Dr. Fritzler took advantage of his relationship with Ms. Carter "to exploit [her] for the faculty member's own purposes." Ms.

Carter simultaneously may have been "exploiting" Dr. Fritzler for her own purposes, but that is not at issue here.

Given Dr. Fritzler's violations of PPMs 3-32a and 9-5, I recommend two disciplinary actions as outlined in PPM 9-14 (Disciplinary Actions):

1. Written reprimand;
2. Acceptance of resignation of the respondent.

Should Dr. Fritzler wish to appeal this decision, he has the right to request a formal hearing with the Faculty Board of Review (PPM 9-12). The current chair of the Board of Review is Dr. Kirk Hagen, Department of Engineering. His contact information is: khagen@weber.edu, 801-626-6998.

Should Ms. Carter wish to appeal this decision, she too has the right to request a formal hearing of the Faculty Board of Review (PPM 6-22.VIII.E.4). Specific guidance on this process can be obtained from the university's Due Process Officer, Dr. Eric Amsel. His contact information is eamsel@weber.edu, 801-626-6006. Should Ms. Carter decide to pursue an appeal, she should contact me at 801-626-7408 or at madonneminer@weber.edu to initiate this process.

XC: Dr. Jason Fritzler
      Mr. Brian Jackson

Attachments:
1. June 21, 2017 letter to Madonne Miner from Dr. Bret Ellis, Vice President of Information Technology at Weber State University;
2. Faculty Reprimand